THE STATE OF KANSAS, *on the relation of H. A. Smith, County Attorney,* v. JOHN I. DENISTON.

1. ELECTION—*Not a Legal Voter.* A man who filed a homestead claim on land in Oklahoma territory, and made a settlement and improvements thereon, in and after the month of June, 1889, and intended to make said claim his home, and who returned to his former residence in Comanche county, in this state, for a temporary purpose, intending to go back to his claim in Oklahoma, was not a legal voter at an election held in Comanche county on the 5th day of November, 1889.

2. ——— *Not Legal Voters.* Persons who filed homestead claims on land in Oklahoma territory, and made settlement and improvements thereon, during and after the month of June, 1889, and who intended to make said homestead claims their homes, and who returned to their former residences in Comanche county, in this state, for a temporary purpose, and agreed to stay and vote at an approaching election if paid for their time, and who voted at said election, and left Comanche county the next day, and have ever since resided in Oklahoma, were not legal voters at an election held in Comanche county on the 5th day of November, 1889.

3. CATTLE MEN—*When Not Legal Voters.* Cattle men employed on a ranch situated in the Indian Territory, south of the state, working by the month, and who had resided out of the state for more than 35 days prior to the election, and who intended to work on such

ranch as long as they were employed, and who had no families re-
siding in Kansas, were not legal voters at an election held in Co-
manche county, in this state, on the 5th day of November, 1889.

4. BRIBERY—*Illegal Ballot.*   When a voter testifies that he was induced
to vote for a candidate for office because he was paid a sum of
money to so cast his vote, the ballot is an illegal one, and cannot be
counted in favor of the candidate in whose interest the money was
paid.

### *Original Proceeding in Quo Warranto.*

THE opinion, filed May 9, 1891, states the material facts.

*H. A. Smith*, county attorney, and *G. C. Clemens*, for
plaintiff.

*Blake & Blake*, and *T. G. Chambers*, for defendant.

Opinion by SIMPSON, C.: This is an original action in *quo
warranto*, the object of which is to determine whether Frank
Meyer or John I. Deniston was duly elected register of deeds
of Comanche county at the general election in 1889.   Meyer
was declared elected by the board of county canvassers, and
received a certificate of election, and within twenty days after
the notification of his election, and prior to the second Mon-
day in January, 1890, he took and filed with the county clerk
his oath of office, and demanded of Deniston the possession of
the office and the things belonging thereto.   Deniston, who had
previously been elected for a term of two years, and who was
legally in the possession of the office, refused to turn it over
to Meyer, claiming that he and not Meyer had been elected
in 1889.   In July, 1890, Meyer tendered to the board of
county commissioners, then in regular session, his resignation,
which was accepted, and one S. D. Stipp was appointed to
serve until the election in 1890.   Stipp took the oath of office,
filed a bond, and demanded possession of the office from Den-
iston, who refused to surrender.   This action was commenced
on behalf of Stipp on the 26th day of July, 1890.

The official canvass of the election in 1889 shows 680 votes
cast for candidates for the office of register of deeds, and of
these Frank Meyer received 345, and John I. Deniston re-

ceived 335. Deniston alleges that at the polling place of
Coldwater township J. M. Stringer, Gater Stringer, Perry
Kinman, J. H. Gratner, G. W. Hoffman, Walter Goff, J. S.
Calloway and Samuel Brown voted for Frank Meyer, when
in truth and in fact they were not qualified electors, and not
entitled to vote at said election; that in Valley township
Abram Vanwey, Otto Barley, W. S. Mussett, Isaac Mussett,
E. F. Bidwell, H. H. Dunham, James Crouch, Alexander
Borland, George Overocker and Burt Crew voted for Frank
Meyer for register of deeds, and that each and all of them
were not qualified voters; that in Protection township W.
M. Davis, W. Y. Davis and Newton Davis voted for Frank
Meyer for register of deeds, and that each and all of them
were not qualified electors; that in Irwin township Jonathan
Morgan and C. M. Ross each voted for Frank Meyer for reg-
ister of deeds, and that they were not qualified electors; that
in Avilla township Samuel Young voted for Frank Meyer
for register of deeds, and that he was not a qualified elector;
that in Shimer township Thomas Curran and R. C. Brennon
voted for Frank Meyer for register of deeds, and that they
were not legal voters; that one O. P. Snare voted at the polls
in this township for Frank Meyer for register of deeds, for
and in consideration of the sum of $7.50, and that this is an
illegal vote; same as to one S. O. Miner, who voted for Meyer
for a consideration of $5; same as to one William Maynard.
This makes 29 illegal votes that are alleged by Deniston to
have been cast for Meyer, and if these are deducted from the
345 given Meyer by the official canvass, Deniston was legally
elected.

It is shown by the evidence that Abram Vanwey, Otto Bar-
ley, W. S. Mussett, Isaac Mussett, E. T. Bidwell, H. H. Dun-
ham, James Crouch, Alexander Boland, George Overocker
and Burt Crew were at the time of the election, to wit, on
the 5th day of November, 1889, and had been for more than
35 days before that time, residents at Gorham's ranch, in the
Indian Territory, and were not actual residents or legal voters
in the state of Kansas; that on the day before the election

they agreed to vote at Valley township precinct in Comanche county, Kansas, and to all vote alike, and to vote for Frank Meyer for register of deeds of Comanche county. They voted at that precinct on the day of election. The poll-books in evidence show that they voted together, their votes being numbered on the poll-books as Nos. 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16. It was shown that the tickets were prepared by Dunham, who scratched the name of John I. Deniston off and inserted the name of Frank Meyer. The handwriting of Dunham in the change of the tickets was conclusively proven, and the tickets themselves were in evidence, and it appears from them that but nine tickets were changed. All these men were most clearly not entitled to vote, and it must be held that there were nine illegal votes for Meyer and one for Deniston. William M. Davis, William Y. Davis and Newton Davis all testify that they left Comanche county on the 22d day of April, 1889, and went to Oklahoma, and there took homestead claims and made settlement and some improvements on their claims, and intended to make their homes in Oklahoma; that in the month of October they came back to Comanche county for various purposes, intending to return to Oklahoma before the election, but that certain persons agreed with them that, if they would stay until after the election and vote, they would be paid for their time. They all three stayed, voted for Frank Meyer for register of deeds, and left for Oklahoma on the 6th day of November, the day after the election, where they have ever since resided. It is plain that these three men cast illegal votes for Meyer.

It is admitted that J. S. Calloway voted at Coldwater township polls. His ballot is numbered 29 on the poll-books, and that the name of Frank Meyer, as a candidate for register of deeds, appears on that ballot. S. T. Golloher testified that, in September, 1889, and long before that time, he was a resident of the state of Alabama; that he knew J. S. Calloway, who was and had been for five years a resident of the state of Alabama; that when Golloher moved to Kansas, in September, 1889, he left Calloway in the state of Ala-

bama, and that Calloway wanted Golloher to bring him to Kansas; that he first saw Calloway in Kansas in the month of October, 1889. On this state of facts, it must be held that the vote cast for Meyer by Calloway was an illegal vote· Thomas Curran, who moved from Logan township to Shimer township on the 10th day of October, 1889, had rented a place in Shimer township on the 19th day of September, and before the 10th day of October had moved a part of his household furniture and some live stock and farming implements to the rented place, but still resided in Logan township with his family until the 10th day of October. He voted in Shimer township, and voted for Frank Meyer for register of deeds for Comanche county. C. M. Ross voted in Irwin township, but had moved into that township within six or eight days before the election; before that time he had been living in Coldwater township, and had been engaged in moving his effects for 60 days prior to the election, intending to make his home and permanent residence in Irwin township. He voted for John I. Deniston for register of deeds. His vote and that of Curran are so similar in their surroundings that the same rule must be applied to both. In this particular case, one having voted for Meyer and the other for Deniston, the result cannot be affected, no matter what the decision may be.

The legality of the votes of R. C. Brennon, Gater Stringer and others is challenged on the following grounds: Gater Stringer, whose deposition was taken in Kingfisher county, in the territory of Oklahoma, testified that on the 8th day of June, 1889, he filed a homestead claim on land in the territory of Oklahoma; that he broke ground and put in a small crop in May and June, 1889, and built his house in November and December, 1889; that from the time he filed on his claim and made settlement, he intended to make that his home and raise his family there. He went back to Coldwater, Comanche county, his former residence, to see his family, who still remained there; voted at the election on the 5th day of November, 1889, for Frank Meyer for register of deeds; left again for Oklahoma on the 7th day of November;

his family followed him shortly afterward; and they have all resided in Canadian county, Oklahoma, ever since. R. C. Brennon filed a homestead claim on land in Oklahoma on the 4th day of June, 1889; he commenced to make his improvements about the middle of September; he intended to make it his home, and had no intention to return to Comanche county, Kansas. His family first came to Oklahoma about the middle of September, 1889, but some time before the election he and his family came back to Comanche county to dispose of what crop they had on hand, and to live until they got ready to move away. He voted and served as a judge of the election in Shimer township. He voted for Frank Meyer for register of deeds. He and his family left Comanche county in the latter part of November for their claim in Oklahoma, where they have ever since resided. Perry Kinman left Comanche county to take a homestead in Oklahoma, and made his filing on the 12th day of June, 1889. He planted some in July, and built his house in the winter. He had been back to Comanche county two or three times, but intended always to and did return to Oklahoma. He was in Comanche county on the day of election, and stated that he voted the straight republican ticket without a scratch. Deniston was the republican candidate for register of deeds. It is very evident that neither Gater Stringer, nor R. C. Brennon nor Perry Kinman was a legal voter in Comanche county. Two of them voted for Meyer and one for Deniston.

One A. H. Wineburner stated that he had received $10 from Deniston for work done for him during the campaign. At the time Deniston paid him a part of the money, he told Wineburner he expected his vote, but Wineburner says that he had not promised to vote for him prior to receiving this money. Deniston does not deny giving the money, but claims he did not offer to pay any until Wineburner had declared that he was going to vote for him, and then the money was furnished to pay the expenses of Wineburner on his trips to different localities. It seems to us that this would be a corrupt vote, if it was shown that Wineburner did vote for Den-

iston. There.is an inference arising from what is recited above that Wineburner did so vote, but it is at best an inference, when with Wineburner on the stand it was within the power of the party producing him as a witness to establish the fact. So with the witness Charles E. Ferguson, who testified that during the first part of the campaign he was for Frank Meyer, and during the latter part of the campaign he was for Deniston; that Deniston paid him for certain work he did, and expenses incurred on his behalf, but the witness is not asked for whom he voted, nor is it shown by other evidence that he did vote at the election. Samuel Brown testified that he voted at Coldwater for Frank Meyer for register of deeds, and that he was paid the sum of $5 for his vote in favor of Meyer. This embraces all the material evidence respecting illegal votes cast at that election for either party, but does not include a mass of stuff consisting of loose declarations and hearsay, to which we have given no weight.

It appears that the following illegal votes were cast for Meyer, to wit, those of Abram Vanwey, Otto Barley, W. S. Mussett, Isaac Mussett, E. T. Bidwell, James Crouch, Alexander Boland, George Overocker, Burt Crew, William M. Davis, William Y. Davis, Newton Davis, J. S. Calloway, Gater Stringer, R. C. Brennon, and Samuel Brown. It appears that the following illegal votes were cast for John I. Deniston, to wit, those of H. H. Dunham and Perry Kinman —two in all. The canvass of the county board is corrected so as to show that 333 votes were cast for John I. Deniston for register of deeds, and 329 for Frank Meyer for register of deeds of Comanche county.

It is recommended that judgment be entered declaring that John I. Deniston was duly elected register of deeds of Comanche county at the election in question, and that a judgment be rendered in his favor for costs.

By the Court: It is so ordered.

VALENTINE, J., concurring.

HORTON, C. J.: I think, under the evidence introduced upon the trial, that John I. Deniston was elected register of deeds of Comanche county at the general election held in November, 1889, but, in my opinion, his majority was only one or two—not more than two in any event. I think, upon the evidence, J. S. Calloway should be counted for Meyer, that Thomas Curran was a legal voter for Meyer, and that A. H. Wineburner—who voted, I think, for Deniston—should not be counted, because his vote was a corrupt one. I make the legal votes as follows: Deniston, 331; Meyer, 330; Deniston's majority, 1. If Wineburner's vote is not taken from Deniston's vote, the canvass should be corrected so as to show: Deniston, 332; Meyer, 330; Deniston's majority, 2.

JOHNSTON, J.: The evidence submitted is not clear or satisfactory as to the exact number of legal votes that were cast for each candidate, but an examination of the same fails to convince me that the board of county canvassers made any mistake in issuing a certificate of election to Frank Meyer, or that John I. Deniston was elected register of deeds by a majority of the legal votes which were cast.