No. 30,696.

S. H. STRACKELJOHN, *Appellant*, v. WILBURN CAMPBELL and HELENE CAMPBELL, *Defendants*, J. M. BURNS and G. E. GOULDING, doing business as Burns & Goulding, and THE FARMERS GRAIN AND LUMBER COMPANY, *Appellees*.

and

THE MASSEY-HARRIS COMPANY, *Appellant*, v. *Same Appellees*.

(12 P. 2d 829.)

Opinion filed July 9, 1932.

*H. O. Trinkle,* of Garden City, for the appellants.

*Lester Luther,* of Cimarron, and *H. J. Foster,* of Garden City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The proceedings in the two above-named cases were, by agreement of parties, tried together, and were consolidated and presented together on appeal to this court.

S. H. Strackeljohn instituted an action and recovered a judgment against Wilburn Campbell and his wife. The Massey-Harris Company also obtained a judgment against Campbell. In each action an order of attachment was issued and levied upon a quantity of threshed wheat as the property of Wilburn Campbell. The Campbells filed motions to discharge the attachments because the alleged ground of attachment upon which the orders were issued was un-

true. After a hearing on these motions the court overruled them, refusing to discharge the attachment. Then the claimants which have been named as defendants, one the firm of Burns & Goulding and the other the Farmers Grain and Lumber Company, each filed a motion to discharge the attachment upon the ground that each of them had obtained and was holding a chattel mortgage on the attached wheat which had been executed by the Campbells to them prior to the levy of attachment. On the trial between those claiming mortgage liens and the judgment creditors claiming attachment liens the court held upon evidence that the mortgage liens were superior to the attachment liens and sustained the motion of the claimants to discharge the attachments. From this ruling the plaintiffs appeal.

The claim of plaintiff S. H. Strackeljohn is that the mortgages given by the Campbells were filed for record in Gray county and not in Finney county, the mortgagor's place of residence. The mortgage to Burns & Goulding was executed in October, 1930, and filed for record in Gray county on October 15, 1930. The mortgage of the Farmers Grain and Lumber Company was dated November 25, 1930, and filed for record with the register of deeds of Gray county on December 3, 1930. The attachments were not levied until August 8, 1931.

The contention of appellants is that the mortgages were void inasmuch as they were not filed with the register of deeds of the county of the residence of the mortgagors. Appellants say that the real residence of the mortgagor was in Finney county, and that as the mortgages were not deposited there, but were deposited in Gray county, they are necessarily invalid. The statute relating to the matter is to the effect that a chattel mortgage is void as against creditors, purchasers or mortgagees unless the mortgage or a copy of the same is forthwith deposited in the office of the register of deeds of the county in which the mortgagor resides. (R. S. 58-301.) As we have seen, the mortgages were executed and filed for record long before the attachments were issued, and the only question raised as to the validity of the mortgages is the matter of the residence of the Campbells.

The mortgagees offered testimony to show that Campbell was on a farm in Gray county, and that he signed the mortgages while he was planting wheat on the farm. There were no substantial improvements on the farm and he and the family occupied a small

movable shack. It was shown that in September, 1930, his wife and children went to Garden City, in Finney county, in order that the children might attend school during the school year. At the end of the school term the family returned to the farm in Gray county, and again when the school opened in the fall of 1931 they returned to Garden City, and their children reëntered school, with a purpose of going back to the farm the following spring. Campbell testified that his residence was in Gray county, and that as evidence of his intention he had voted there and never had a purpose of establishing a residence in Finney county. He said his business was farming, that he moved on the farm in Gray county and considered that place to be his residence. He had exercised his rights as a citizen and had voted there and had never voted in Finney county. The family, he said, had gone to Garden City temporarily to obtain for the children the benefits of a school there which were not available near their home in Gray county. Mrs. Campbell testified that the family moved to Garden City, Finney county, for the purpose of placing the children in school, and it was done with the intention of returning to the farm in Gray county at the end of the school year, and further that she voted in Gray county at the last election. Their stay in Garden City, she said, was temporary, and for the sole purpose of sending the children to school. On the other hand, appellants offered testimony that the Campbells had signed mortgages in which it was recited that they were residing in Finney county, and that he, Mr. Campbell, had applied for and obtained a truck license in Garden City, in which it was stated that he was a resident of that city. Campbell testified, however, that he did not notice or know of the recitations in the mortgages to the effect that he was a resident of Finney county.

Upon the evidence the court determined that the Campbells were residents of Gray county and held the mortgage liens to be valid. The controverted question is, Where was the permanent residence of the Campbells?—a question of fact. Was the residence in Gray or Finney county? The question of residence or domicile is largely one of intention. In our statute we have this definition:

"The term 'residence' shall be construed to mean the place adopted by a person as his place of habitation and to which whenever he is absent he has the intention of returning." (R. S. 77-201, subdiv. 23.)

There is testimony tending to show that the Campbells located on the farm with the intention to make it their fixed home for an in-

definite time. The mere declaration by them of their intention is not conclusive on the question of residence. It has been said:

"Intention is, of course, a matter of fact. It is not often that intention is established by proof of a particular fact, and the trier of the fact must ordinarily reach a conclusion from proof of declarations, conduct, and a variety of circumstances." (*Ford, Adm'x, v. Peck,* 116 Kan. 74, 225 Pac. 1054.)

In this case there is not only the avowed purpose of the Campbells to make their permanent residence on their farm in Gray county, but there is also the fact that they did live there a considerable part of the time, and the further unequivocal fact that they exercised their political rights by voting in that county, and of course they were only entitled to vote in the county of their residence. So we have not only the avowed purpose of the Campbells to establish and thereafter regard Gray county as their permanent residence, but their conduct and some of their acts concur with their declarations and avowal of intention. In that respect the actions of the Campbells confirm their words and verify their declared intention.

Plaintiffs say that they did not have a real dwelling place on the farm, that the shack in which they lived was only a temporary shelter while putting in the crop and harvesting it. It was a small, frail habitation and we all know that permanent homes have been established by the pioneers where the homes occupied were tents, sod houses and shacks, which constituted their only and real homes. The fact is that the Campbells occupied this home for a considerable time, and the fact that it did not furnish the ordinary comforts of a home does not militate against the finding that it was their residence. In 19 C. J. 402 it is said:

"The character of the residence is of no importance in fixing the domicile, except as it may have a bearing on the question of intent, and it is immaterial whether the party lives in his own dwelling or in a hired house, or at a boarding house or hotel. Residence in some one particular house as a fixed place of abode is not essential. A domicile may be any building or shelter used as a permanent residence, although not characterized by the usual appearance of a dwelling house or the ordinary comforts of a home."

The further fact that the family went to Garden City to place their children in school is not inconsistent with their claim of residence in Gray county. The practice of temporarily residing near a school, away from their permanent home, while the children are in attendance at the school is not uncommon among the people and is generally regarded as a temporary absence. The testimony tended to show that it was a temporary absence for a special purpose, and

the rule is that if a person leaves his home for a temporary purpose with an intention to return there is no change of domicile, and the fixed domicile is not changed, even by a long absence. (19 C. J. 407.)

The question of residence, as we have said, was one of fact for the trier of the facts, and our conclusion is that the evidence in the record is sufficient to sustain the finding of the trial court that the residence of the Campbells was in Gray county.

The judgment is affirmed.