No. 35,717

THE STATE OF KANSAS, ex rel., JAY S. PARKER, Attorney General of the State of Kansas, JOSEPH H. MCDOWELL, PAT WARNICK, WARD MARTIN, GLENN JONES and BEN L. HUMPHREYS, County Attorneys of Wyandotte, Sedgwick, Shawnee, Labette and Crawford Counties, *Plaintiffs*, v. PATRICK J. CORCORAN, Commissioner of Elections of Kansas City, E. R. MOONEY, Commissioner of Elections of the City of Wichita, CLYDE O. TRESNER, Commissioner of Elections of the City of Topeka, DALE M. RAYMOND, City Clerk of the City of Parsons and AGNES M. YOUNG, City Clerk of the City of Pittsburg, *Defendants*.

(128 P. 2d 999)

Opinion filed September 19, 1942.

*Eldon Wallingford,* assistant attorney general, argued the cause, and *Jay S. Parker,* attorney general, and *A. B. Mitchell,* assistant attorney general, were on the briefs for the plaintiffs.

*Joseph H. McDowell* and *Thomas E. Joyce,* both of Kansas City, argued the cause, and *Thomas M. Van Cleave, Jr., John J. Bukaty, O. Q. Claflin, III,* and *Ulysses G. Plummer,* assistant county attorneys of Wyandotte county, were on the briefs for plaintiff Joseph H. McDowell.

*Pat Warnick,* county attorney of Sedgwick county, and *L. M. Kagey,* assistant county attorney, were on the briefs for plaintiff Pat Warnick.

*Braden C. Johnston,* assistant attorney general, argued the cause, and was on the briefs for all the defendants.

*Alton H. Skinner,* of Kansas City, argued the cause, and was on the briefs for defendant Patrick J. Corcoran.

*Ben W. Weir,* city attorney of Pittsburg, appeared for the city of Pittsburg.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus brought by the state on the relation of the attorney general and the county attorneys of the counties of Wyandotte, Sedgwick, Shawnee, Labette and Crawford, in which counties are situated respectively the cities of Kansas City, Wichita, Topeka, Parsons and Pittsburg. In each of the cities registration of voters is required. In Kansas City, Wichita and Topeka an election commissioner, and in Parsons and Pittsburg, the city clerk, is the official in charge of the registration of voters. Each of these officials is made a party defendant.

In the motion for the writ it is alleged that the government of the United States, under the authority of Title 42, U. S. C. A., section 1521, legally procured the fee simple title to a certain tract of real property within the corporate limits of Kansas City, and also to a certain tract of real property within the corporate limits of Wichita, and has constructed on each of the tracts a large number of dwelling houses to provide housing facilities for persons engaged in "national defense activities," as that term is used and defined by Title

42, U. S. C. A., section 1522; that these dwellings became and now are occupied by the following classes of persons and their families: (a) Men employed by the government of the United States as engineers, inspectors, or guards in the construction, maintenance and operation of plants, factories and other industries engaged solely in production of materials necessary to the national defense; (b) persons employed and paid by private contractors under contracts with the government of the United States in the building and equipping of plants, factories and other industries essential to the national defense; and (c) persons employed and paid by local persons, firms and corporations now producing at the plants some other material, equipment and supplies necessary to and used exclusively in the national defense.

It is alleged that many of such persons were nonresidents of the state of Kansas at the time of their entry on property above mentioned, and that others moved there from various points within the state of Kansas; that the government has assumed and is now exercising jurisdiction over each of the tracts so acquired, save and except such jurisdiction as is retained by our statute (G. S. 1935, 27-102), and under acts of congress, and is regulating wages and hours of all persons living on the tracts of land and employed as above set out; that numerous persons of each class of workers above mentioned, occupying the dwellings located as above described, and having so occupied the premises for a period of six months or more, being citizens of the state of Kansas and otherwise qualified as electors of the state, save and except as to the question of their residence, have applied to the commissioner of elections in their respective cities to be registered as qualified voters, and upon such request the respective election commissioners, believing that such applicants for registration were not in fact qualified electors of the city, but believing and contending that the residence of such applicants was and is only a temporary residence, that the entire housing project is in and of itself of only a temporary nature to be maintained only during the duration of the emergency, and that the project at the conclusion of such emergency would be terminated, disassembled and abandoned as authorized by Title 42, U. S. C. A., section 1541; and further believing that each of such applicants is classified as a person engaged in national defence activities, and as such can neither gain nor lose residence for voting purposes, have failed and refused to register any of such applicants for registration.

Plaintiffs allege that the election commissioners are acting under an erroneous belief and misinterpretation of the law, and that their refusal to register such applicants constitutes a refusal of the election commissioners to perform their lawful duties.

Plaintiffs further allege that located within each of the cities of Kansas City, Wichita, Topeka, Parsons and Pittsburg are what are known as "trailer camps"; that under Title 42, U. S. C. A., section 1521, the government of the United States has acquired possession of tracts of land located in such cities by leases entered into with the owners of the fee title, which leases run from year to year and are made for the duration of the emergency declared by the president of the United States, September 8, 1939; that after obtaining possession of such tracts the government has placed thereon homes known as "trailer homes," being small houses mounted on wheels capable of being moved from one place to another, which homes are occupied by the various classes of workers and employees and their families hereinbefore mentioned, who perform the same class of work and fulfill the same duties to their various employers as above set out; that many of such persons were nonresidents of the state at the time of their entry upon such property, and others moved thereon from various points within the state of Kansas; that the labor and services of the men so residing on such properties are essential to the national defense, and each of them is employed in "national defense activities"; that various of the persons residing in such residences are qualified electors except for the place of their residence and the type of work they do and have applied to the proper election commissioner or city clerk to be registered as voters, which request has been refused by such official for the reasons previously stated.

Plaintiffs further allege that many workers in each of the above described classes, together with their families, and employed in each of the various classes of work in "national defense activities," as above described, and in each and all of the cities, are now and for more than six months have been living in homes owned by individuals other than themselves; that some of the workers moved to such homes from without the state, and others from various parts within the state, having resided in their present locations for more than six months, and believing themselves to be legally entitled to registration as voters, have made application to be so registered, but that the commissioners of election and city clerks have refused to

register such applicants, basing their refusal upon the grounds hereinbefore set out, except the ground that the applicant was residing upon property owned wholly by the government of the United States, and plaintiffs allege that such refusal was and is based upon an erroneous interpretation of the law and constitutes a failure on the part of the defendant officials to perform their official duties.

Plaintiffs further allege that within the corporate limits of Kansas City the government of the United States (in 1939) legally acquired the fee simple title to a certain tract of land for the purpose of erecting and maintaining a post office and other federal buildings thereon; that upon the acquisition of such title the government assumed full control and possession of the premises, but that no further work has been undertaken in connection with the erection of such federal buildings, but on the contrary the government has leased the homes located on the premises, when purchased, to various persons who are now living in such homes; that the persons residing in such homes, being otherwise qualified electors, made application to the commissioner of elections of Kansas City to be registered as voters, but such application was refused upon the ground that the applicants reside on the ground purchased by the United States by the consent of the legislature of Kansas and were not qualified electors of the state, and it was alleged that such refusal constitutes a failure on the part of the commissioner of elections to perform his official duties.

The prayer was that an alternative writ issue, and upon final hearing an order issue requiring the respective commissioners and city clerks to register as voters each of the applicants of the various classes mentioned in the motion.

The alternative writ was issued. The commissioner of elections of Kansas City filed an answer setting out more in detail the circumstances respecting the tracts of land acquired by the government in Kansas City, how they were improved, occupied and managed; admitted many of the allegations of the motion for the writ, alleged uncertainty as to his duties respecting the registration as voters of the persons occupying such properties, and asked the court to make such ruling as the law and facts justified. The city clerk of Pittsburg filed a motion to quash the alternative writ for the reason that no facts were alleged justifying its issuance.

At the request of the parties the case was advanced for hearing, has been argued orally, and numerous briefs have been filed. No question of misjoinder of parties is presented. Liberally construed, the pleadings present a case for a declaratory judgment.

We turn now to the questions argued. In the motion for the writ and in the briefs and arguments the facts are stressed that the applicants seeking registration as voters are employed by the federal government, or by contractors who have contracts with the federal government, and that their work is devoted wholly to the national defense, and that others are employed by private firms or individuals engaged primarily in the national defense. We think these facts have no bearing on the right of the applicants to vote. In this state the right to vote is conferred by our constitution (art. 5, § 1) upon all citizens of the United States of the age of twenty-one years and upwards "who shall have resided in Kansas six months next preceding any election, and in the township or ward in which he or she offers to vote, at least thirty days next preceding such election . . ." unless disqualified for reasons not necessary to be noted here.

The motion for the writ and the arguments stress the thought that the employment in which these applicants for registration are engaged is temporary in character, hence that the residence of the applicants in question is temporary and that they still retain their domicile or home at the place in Kansas or some other state from which they came to the work they are now doing. This thought presents no new legal question. A citizen has a right to change his residence, either temporarily or permanently. Whether he does, or which he does, is determined by his acts and his intentions. See our constitution (art. 5, §§ 1, 3), G. S. 1935, 25-108, 25-407, 77-201, subsections 23 and 24, and the following cases: *Ingraham v. Mc-Graw,* 3 Kan. 521; *Hart v. Horn,* 4 Kan. 232; *Hunt v. Richards,* 4 Kan. 549; *Hixon v. George,* 18 Kan. 253, syl. ¶ 9; *Adams v. Evans,* 19 Kan. 174; *Keith v. Stetter,* 25 Kan. 100; *Garlinghouse v. Mulvane,* 40 Kan. 428, 432, 19 Pac. 798; *State, ex rel., v. Deniston,* 46 Kan. 359, 26 Pac. 742; *Palmer v. Parish,* 61 Kan. 311, 59 Pac. 640; *Uhls v. Allard,* 69 Kan. 825, 77 Pac. 752; *Ford, Adm'x, v. Peck,* 116 Kan. 74, 225 Pac. 1054; *Roberts v. Robertson,* 123 Kan. 222, 252 Pac. 475; *Strackeljohn v. Campbell,* 136 Kan. 145, 12 P. 2d 829; *Campbell v. Ramsey,* 150 Kan. 368, syl. ¶¶ 8, 9, 92 P. 2d 819.

The proceeding before us presents no new questions of law respecting this matter. Defendants, as to each applicant, must determine this matter in harmony with the general rules of law as set forth in the authorities just cited.

The real question in this case is whether the place where the applicant for registration resides at the time he makes his appli-

cation is a place within the state of Kansas and under the jurisdiction of its laws. The pertinent portion of our federal constitution (art. 1, § 8, cl. 17) reads:

"The Congress shall have Power . . . To exercise exclusive legislation in all cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; . . ."

The pertinent sections of our General Statutes (Laws 1927, ch. 206) read:

"That the consent of the state of Kansas is hereby given, in accordance with the provisions of paragraph number seventeen, section eight, article one of the constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in the state of Kansas, which has been, or may hereafter be, acquired for custom houses, courthouses, post offices, national cemeteries, arsenals, or other public buildings, or for other purpose of the government of the United States." (27-101.)

"That exclusive jurisdiction over and within any lands so acquired by the United States shall be, and the same is hereby, ceded to the United States, for all purposes; saving, however, to the state of Kansas the right to serve therein any civil or criminal process issued under the authority of the state, in any action on account of rights acquired, obligations incurred or crimes committed in said state, but outside the boundaries of such land; and saving further to said state the right to tax the property and franchises of any railroad, bridge or other corporations within the boundaries of such lands; but the jurisdiction hereby ceded shall not continue after the United States shall cease to own said lands." (27-102.)

"That the jurisdiction hereby ceded shall not vest until the United States shall have acquired the title to said lands; and as long as said lands shall remain the property of the United States, the same shall be exempt from all state, county and municipal taxes." (27-102a.)

It is well settled in this state, and generally elsewhere, that when the federal government, under authority of congress, exercises exclusive legislation over a tract of land situated within the state for any of the purposes mentioned in the provision of the federal constitution above quoted, and such exercise of exclusive legislation by congress is consented to by the state under a statute similar to ours above quoted, a resident of such a tract of land is not deemed a resident of the state with authority to vote at state elections. See *Herken v. Glynn*, 151 Kan. 855, 101 P. 2d 946, where the authorities on the subject are collected.

However, it is the rule that even though the federal government desires the use of a tract of real property situated in a state for some purposes it is not compelled to exercise exclusive legislation with respect to it even though a state has a statute similar to ours above quoted. (*Atkinson v. Tax Comm.*, 303 U. S. 20, 58 S. Ct. 419; *Stewart & Co. v. Sadrakula*, 309 U. S. 94, 60 S. Ct. 431.) In recent years, by the acquisition of land for some purposes, the congress has clearly indicated its intention not to exercise exclusive legislation over the land taken. In the act of congress providing for the housing of persons engaged in the national defense (Title 42, U. S. C. A., § 1501 *et seq.*) is section 1547, which reads:

"Notwithstanding any other provision of law, the acquisition by the administrator of any real property pursuant to subchapters II-IV shall not deprive any state or political subdivision thereof, including any territory or possession of the United States, of its civil and criminal jurisdiction in and over such property, or impair the civil rights under the state or local law of the inhabitants on such property."

The term "civil rights," as used in this section, has been construed as being broad enough to include "political rights." (*Johnson v. Morrill*, [Calif. Sup. Ct.] 126 P. 2d 873.)

It therefore follows that the federal government has never exercised exclusive legislation, which is tantamount to exclusive jurisdiction, over the tracts of land in Kansas City and Wichita used for housing facilities, nor upon the "trailer camps" of any of the cities in question, and certainly has not attempted to exercise any type of authority over the real property owned by private individuals, which types of real property are referred to in the motion for the writ.

The situation with respect to the tract of land purchased in Kansas City, Kan., designed for the use of erecting a post office and other federal buildings comes in a somewhat different class. We are told in the briefs and arguments that it was purchased in 1939, prior to the enactment by congress of the acts last quoted. It would seem that these late acts of congress are not applicable, hence it follows that the rule announced in the case of *Herken v. Glynn*, supra, applies.

From what has been said it follows that residence on the land used for the housing projects in Kansas City and Wichita, standing alone, does not constitute lawful grounds for denying the right to register, and persons so residing should be registered as voters if otherwise qualified. The same rule should apply to those living in the "trailer camps" and any properties privately owned. The rule

does not, however, apply to those residing upon the property in Kansas City, Kan., purchased by the federal government in 1939 for a post office and other federal buildings.

Since the purpose of the action was to determine the rights, authority and duties of defendants, we think the formal writ of mandamus need not be issued. Jurisdiction of the action will be retained, however, for the making of such orders as may be necessary to carry out the views of the court herein expressed.