No. 38,909

Harold L. Hammond, *Appellant,* v. R. P. Brinkman, County Clerk of the County of Johnson in the State of Kansas, *Appellee.*

(246 P. 2d 345)

Opinion filed July 29, 1952.

*Claude L. Rice,* of Kansas City, argued the cause, and *Elmer Hoge,* of Overland Park, was with him on the briefs for the appellant.

*John Anderson, Jr.,* county attorney, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This was a mandamus action by a resident of Sunflower Precinct, Lexington Township, in Johnson County, to compel the defendant county clerk of that county to register plaintiff as a qualified voter. From an adverse judgment plaintiff has appealed.

All of the facts were stipulated, and a brief summary of those which are pertinent to the issue is as follows:

Other than his alleged disqualification by virtue of his residence on Federally owned property, plaintiff is in all respects a qualified voter under the laws of Kansas. Defendant county clerk, being of the opinion plaintiff was not entitled to vote at the next ensuing election, denied to him the right to register (G. S. 1949, 80-1724). The area in which plaintiff resides is a housing project commonly referred to as Sunflower Village, is adjacent to the Sunflower Ordnance Works near De Soto, in Johnson County, and was acquired by the Federal government by condemnation and warranty deed in October, 1942, in connection with war industries and defense activities.

On April 22, 1943, the Secretary of War notified the Governor of Kansas that:

" . . . . . . . . . . . . . . . . . . .

"Accordingly, notice is hereby given that the United States accepts exclusive jurisdiction over all lands acquired by it for military purposes within the State of Kansas, title to which has heretofore vested in the United States, and over which exclusive jurisdiction has not heretofore been obtained.

" . . . . . . . . . . . . . . . . . "

The area upon which plaintiff resides was included in the land covered by this notice.

On May 15, 1945, under the authority of 42 U. S. C. A. § 1521, et seq. (commonly nown as the Lanham Act, the effective date of which was October 14, 1940), the Secretary of War transferred the property in question to the National Housing Agency. Since that date the property has been under the supervision and control of the Housing and Home Finance Administrator, and has been operated as a portion of an emergency housing project.

Counsel are in agreement that pursuant to the notice by the Secretary of War to the Governor of Kansas the Federal government had exclusive jurisdiction over the area in question, and that had that status continued undoubtedly plaintiff and others similarly situated would not, under the rule laid down in Herken v. Glynn, 151 Kan. 855, 101 P. 2d 946, be entitled to vote locally.

Plaintiff, however, contends that the subsequent transfer of the area by the Secretary of War to the National Housing Agency, under the authority of the Lanham Act, had the legal effect of restoring to the residents thereof all civil rights under the state or local law, as provided by § 1547 of the Act, which reads:

"Notwithstanding any other provision of law, the acquisition by the Administrator of any real property pursuant to subchapters II-VII of this chapter shall not deprive any State or political subdivision thereof, including any Territory

or possession of the United States, of its civil and criminal jursdiction in and over such property, or impair the civil rights under the State or local law of the inhabitants on such property. . . ."

Defendant, on the other hand, contends that while this section purports to preserve civil rights of inhabitants upon land which at the time of its acquisition is under the jurisdiction of a state, it has no application of a restorative nature to the area here involved because of the fact that when the transfer to the National Housing Agency was made the property was under the exclusive jurisdiction of the Federal government, and consequently there were no civil rights under the state or local law to be restored.

We are of the opinion that defendant's theory leads to a too narrow construction of the Act and would violate both the spirit and letter of its provisions. In *State, ex rel., v. Corcoran,* 155 Kan. 714, 128 P. 2d 999, 142 A. L. R. 423, we had occasion to consider the effect of § 1547, *supra,* on civil rights of inhabitants of areas acquired by the Federal government for national defense activities, and it was there held that the term "civil rights," as used in the section, includes "political rights"—that is, the right to vote. It is true that in that case the lands were acquired in the first instance under the provisions of the Lanham Act—whereas here it was the transfer to the National Housing Agency that was made under the Act. But, insofar as the underlying principle is concerned, we think it is a distinction without a difference, and that the rule laid down in the Corcoran case with respect to the civil rights of those residing in housing projects applies to the facts before us. See, also, the annotation at 142 A. L. R. 430, and *Johnson v. Morrill,* 20 C. (2d) 446, 126 P. 2d 873.

Nowhere in this record, the briefs, or oral argument, has it been made to appear that defendant, his counsel, or the trial court, have in any way attempted to deprive plaintiff, or others similarly situated, of his or their legal right to register, and thus to vote. It is clear that this action arose out of a real difference of opinion as to the legal status of plaintiff due to his residence in the area in question. The matter resolves itself into a pure question of law. We are of the opinion that plaintiff, being otherwise qualified, was erroneously denied the right to register, and the judgment of the lower court is therefore reversed.