No. 21,586.

THE STATE OF KANSAS, ex rel. HERBERT E. RAMSEY, as County Attorney of Reno County, *Plaintiff*, v. THE CITY OF HUTCHINSON et al., *Defendants.*

SYLLABUS BY THE COURT.

CITIES — *Extension of City Limits — Jurisdiction Long Exercised — Presumptions of Regularity of Proceedings.* Under the facts stated in the opinion, the presumption that a certain ordinance adding to the territory of the defendant city was preceded by the requisite statutory preliminaries will not be permitted to be overthrown by the claims of the city to the contrary.

Original proceeding in quo warranto. Opinion filed July 6, 1918. Writ allowed.

*Herbert E. Ramsey, F. L. Martin,* and *E. T. Foote,* all of Hutchinson, for the plaintiff.

*Walter F. Jones,* of Hutchinson, for the defendants.

The opinion of the court was delivered by

WEST, J.: This action was brought by the state, on the relation of the county attorney, to determine the authority of the city of Hutchinson over the land occupied by the reformatory.

It was averred that this land was taken in by ordinance No. 14, in 1886, and that by ordinance No. 241, in 1890, the limits were declared and defined so as to include the same territory, but that in August, 1914, by ordinance No. 1135 an attempt was made to exclude a large amount of this territory, but that it was so uncertain and indefinite as to be without effect. In overruling a demurrer to the petition it was held (*The State, ex rel., v. City of Hutchinson,* 102 Kan. 325, 169 Pac. 1140) that the latter ordinance could not, under its title, exclude territory from the city, and that the part intended to have this effect was void. Thirty days' time was given to answer and set out specifically any proceedings upon which the city might rely as having effected the exclusion of the tract in question. The case now comes up on the answer, the reply, and an agreed statement of facts.

The answer alleges, among other things, that ordinance No. 14, passed in 1886, was utterly void; that by ordinance No. 241,

passed in July, 1890, the boundaries were defined so as to include this territory; that in 1911 the city employed a competent man to define and correct the boundaries of the city, who reported thereon and was paid therefor, the boundaries defined by him excluding the tract in question, his report being entered in the plat book in the office of the city clerk. It was further alleged that ordinance No. 1135, except for a mere clerical error, excluded the tract, and that this error was corrected on the original ordinance and in the ordinance book. Certain acts of recognition were also pleaded.

The agreed statement of facts, in addition to setting up certain acts of the township and county touching the roads traversing this land, admitted the entering in the plat book of the report of the person employed to correct and define the boundaries; that from the adoption of ordinance No. 14 the tract in question and the officers and persons residing thereon had been in all respects treated as within the city as to taxation, registration, enumeration, and voting; that no proceeding by petition by the mayor and council was ever begun, and no order was ever made by the judge of the district court relating to annexation; that correction of ordinance No. 1135, so as to leave out this land, was made after its passage, but without republication; that the officers of the reformatory living on the tract in question (most of which is owned by the state) have ever since been recognized as rightful voters in the city; that the electors and inmates of the reformatory were included in the enumeration and embraced as residents of the city at the time of the proclamation by the governor in 1911 declaring it a city of the first class; and that those living on the land are registered as voters in the city, their right to vote there never having been questioned until since the April election, 1917.

It is contended that in these various ways the city has estopped itself to deny its dominion over the disputed territory, and that at the suit of the state it may be compelled to retain and exercise jurisdiction. On the other hand, it is urged that ordinance No. 14 was void and could confer no municipal authority, and that as a general proposition, in an action between the city and the state, jurisdiction cannot be established or acquired by estoppel as claimed by the plaintiff.

If the territory was lawfully within the city it could not be

seriously contended that the map defining the boundaries could work a contraction of the city limits, and the abortive effect of ordinance No. 1135 was declared in the former opinion.

When ordinance No. 14 was passed, chapter 97 of the Laws of 1885, as amended by chapter 69 of the Laws of 1886, was in force, and the former methods of adding territory were thereby superseded. The method prescribed by the amendment of 1886 was by the presentation of a petition to the judge of the district court, and upon favorable finding as to the advisability, and after certain prescribed publications, the city council was authorized to add such territory by ordinance, which it could do without such preliminaries in case the territory sought to be added was subdivided into lots and blocks. Only a small portion of the land in controversy was thus subdivided when the ordinance was passed.

From 1886 until 1914, 28 years, no attempt was made by ordinance to exclude any of this territory, and until after the April election of 1917 its citizens were, in the respects indicated, treated as residents of the city. The state is the creator of municipal corporations. It can give and it can take away. Hence, it may raise questions of power and jurisdiction when private parties will not be permitted to do so. When a city has by ordinance taken over additional territory, a private citizen will not ordinarily be heard to question the law under color of which such action has been taken. (*Topeka v. Dwyer,* 70 Kan. 244, 254, 78 Pac. 417; *Railway Co. v. Lyon County,* 72 Kan. 16, 84 Pac. 1031; *Chaves v. Atchison,* 77 Kan. 176, 93 Pac. 624; *Gardner v. Benn,* 81 Kan. 442; 105 Pac. 435; *Price v. City of McPherson,* 92 Kan. 82, 139 Pac. 1162; *Horner v. City of Atchison,* 93 Kan. 557, 144 Pac. 1010; *The State, ex rel., v. City of Hutchinson,* 102 Kan. 325, 326, 169 Pac. 1140.)

There being no private party who could under ordinary circumstances raise the question of jurisdiction, and the only authorized party—the state—having failed to raise it, the result is that when this suit was begun the city had for nearly thirty years been holding itself out as including the disputed territory. Doubtless many important municipal matters, financial and otherwise, have been conducted on this assumption. The state has a right to present the facts to the court, to con-

sent that the long exercised authority be continued, and to ask that the city be required to give some valid reason why its exercise should cease. All this is proper for the avoidance of friction, confusion, and uncertainty in things involving the rights, duties, and liabilities of the defendant city and those dealing with it.

The record presents a situation of power so long exercised and so acquiesced 'in and recognized that the otherwise imperative presumption that the ordinance was preceded by the required preliminaries cannot at this late day be permitted to be overthrown by the claims of the city to the contrary. The writ is allowed.

MARSHALL, J., dissents.