No. 34,069

ANNA BLAIR, *Appellee,* v. STEVE M. BLAIR, *Appellant.*

(85 P. 2d 1004)

Opinion filed January 7, 1939.

*John B. Bryant* and *B. Mack Bryant,* both of Wichita, for the appellant.
*Arnold C. Todd,* of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action was commenced December 30, 1937, in McPherson county, Kansas, by a wife, against her husband, for alimony or separate maintenance.

The petition alleged that they were married December 28, 1936, and that the husband had been guilty of gross neglect and extreme cruelty toward her. The petition further alleged the extent and amount of property owned by defendant and that she was without property or means with which to support herself. It is stated in the brief of defendant that service was had by attachment upon the real property of defendant in that county and later by alias summons. The answer was a general denial except as to the fact of the marriage and a special denial as to the residence of the plaintiff being in McPherson county, and that the defendant at any time or place ever neglected or refused to provide for the plaintiff to the best of his means and ability. The answer further alleged the execution of an antenuptial agreement and attached a copy

thereof to the answer as an exhibit. The reply was a general denial and a special denial as to the antenuptial agreement except as to its execution.

The defendant filed a plea in abatement which, after a hearing thereon and a stipulation, the trial court overruled. Later the court also overruled the motion of defendant for dissolution of the attachment, finding "that said plea in abatement and said statement made by counsel for the defendant in open court constitute a general appearance in said court." Later, after the introduction of evidence by the plaintiff, the court overruled defendant's demurrer thereto. After hearing the evidence of defendant and the evidence in rebuttal, the court filed a decision containing findings and conclusions, and among other matters shown in the journal entry are that the allegations in the petition are true, that the defendant has been guilty of gross neglect of duty toward the plaintiff, that on account thereof the plaintiff is entitled to separate maintenance and alimony. And the journal entry, after stating the value of certain property owned by the defendant, found the plaintiff should be paid as alimony the sum of $14,400 at the rate of $60 per month, and that it be made a lien on certain described land in McPherson county. From these rulings and this judgment the defendant appeals to this court, assigning the following specifications of error:

"1. The court erred in not sustaining defendant's plea in abatement.

"2. The court erred in not sustaining defendant's demurrer to the evidence, as plaintiff was not a resident of the county as required by the code.

"3. The court erred in not sustaining defendant's demurrer to the evidence on the grounds that there was no corroboration of plaintiff's testimony as required by statute.

"4. The court erred in that he entirely ignored the antenuptial agreement between plaintiff and defendant and neither upheld it nor set it aside.

"5. The court erred in that the award of alimony was grossly excessive and amounts to more than the entire total value of defendant's property."

We have in this appeal an abstract and brief of the appellant, but only an application of the attorney for appellee for an additional attorney fee for services rendered in examining the transcript of the evidence and the abstract and brief of the appellant and for time spent in a preliminary way for the preparation of a counter abstract and brief. The clerk of this court has letters from the attorneys for both appellant and appellee stating that the litigants have reconciled and settled at least some of their difficulties and differences and are now living together, which would ordinarily make

the issues moot, but appellant by letter insists "that the matter proceed to a final determination and an opinion written by the court in the regular manner."

The abstract does not contain any of the evidence except that of one witness concerning the reading and explaining of the antenuptial contract to the plaintiff and the execution of the same thereafter. Many of the matters forcibly argued by counsel for the appellant entirely depend upon the nature and extent of the evidence.

Appellant first urges his plea in abatement, citing *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 42 Kan. 223, 21 Pac. 1071, and *Brock v. Francis*, 89 Kan. 463, 131 Pac. 1179, the former holding that the actual date of service of process will fix the time when the court takes jurisdiction, and the latter where an alias summons was issued and served the action was not to be considered as commenced until the date of the last-mentioned summons. The alias summons, however, in the case cited, followed earlier regular summons, and the statute of limitations was involved. In the case at bar, as far as we are informed, the alias summons followed the service of summons by an order of attachment, which would give jurisdiction naturally to the extent of the property attached, and the subsequent alias summons personally served would give unlimited jurisdiction. The brief of appellant compares the date of this service with the date of a divorce action commenced by the husband in another county and service of summons had upon the wife, and argues that if the service in this action was later than that in the case brought by the husband, the case should be abated. That argument may be sound, but without knowing how much and what evidence along these lines was furnished to the trial court we cannot say that the court was in error in overruling that plea in abatement.

The next error assigned is the want of jurisdiction in that the wife never was an actual resident of McPherson county. The statute, G. S. 1935, 60-508, is as follows:

"An action for a divorce, or to annul a contract of marriage, or for alimony, may be brought in the county of which the plaintiff is an actual resident at the time of filing the petition or where the defendant resides or may be summoned."

This section provides that the residence of the plaintiff must be an actual residence. Another statute defining residence is G. S. 1935, 77-201 (23), which is as follows:

"The term 'residence' shall be construed to mean the place adopted by a

person as his place of habitation, and to which, whenever he is absent, he has the intention of returning."

Neither of these statutes requires any stated time one must abide at a place before he can call it his actual residence, as in the case of a voter at an election. A place may in good faith become one's actual residence the first day he arrives there if he really intends to make it his domicile or home. As said in the case of *Carpenter v. Carpenter*, 30 Kan. 712, 2 Pac. 122, residence and actual residence have in divorce cases a contemplation of a more permanent and fixed character than in other cases. That is all in the mind, conduct, words and intention of the party establishing the residence. The trial court had before it whatever there was on that question, and therefore we cannot say there was not sufficient to show that the plaintiff's residence was her actual residence at the time she commenced this action.

The third assignment of error is in overruling the demurrer of defendant to the evidence of plaintiff for the want of corroboration. We may admit all the law points urged by appellant on this question and yet be unable to reach his conclusion without a word of testimony given by the plaintiff or other witnesses before us. The brief advises us that she produced no other witness than herself except as to the value of defendant's property. The abstract shows a receipt given by the wife, marked as exhibit 9, which was dated December 6, 1937, in which she acknowledged receipt of $100 from her husband, $40 of which is stated to be for her maintenance for one month and the balance for other purposes. The brief of appellant states that for January, February and March, 1938, $200 per month was paid plaintiff "out of funds belonging to the defendant." This language hardly indicates that the defendant paid it to her himself, and the trial court found that "defendant has been guilty of gross neglect of duty toward plaintiff, certainly since December, 1937, and failed to furnish support in accordance with his means prior to that time." In a statement of facts in the brief it is said that after the attachment was made on defendant's eighty acres of land in McPherson county a receiver was appointed to collect the oil runs therefrom, and the trial court may have observed from the evidence in that connection that this $200 per month for those three months was not being paid voluntarily by the defendant for the support of his wife, which in itself would be additional evidence of defendant's neglect of the duty of supporting and maintaining his wife, and may have been sufficient in the mind of the trial judge to comply with the

rule of necessary corroboration as held especially in the case of *Frye v. Frye,* 134 Kan. 3, 4 P. 2d 415.

Another assignment of error is that the trial court entirely ignored in its decision the antenuptial agreement, citing a number of Kansas decisions which treat that subject, particularly among them *Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537, and the very recent case of *Petty v. Petty,* 147 Kan. 342, 76 P. 2d 850. In the first-named case the matter arose not as to maintenance but as to the validity of an antenuptial agreement in giving the widow in the settlement of her husband's estate a child's share as provided in the agreement, which was held to be valid and enforceable. In the recent Petty case the agreement made was not antenuptial, but a separation agreement made nine years after the marriage, and although the court held the wife had no right to alimony because the divorce was granted her husband on account of her gross neglect of duty, yet the terms of such an agreement freely and fairly made should not be ignored or disregarded.

Our attention has not been called to any provision in the antenuptial agreement in the case at bar as to maintenance of the wife during the life of both parties, and after a careful reading of the agreement such a provision is not plainly stated. The judgment of the trial court did not divorce these parties. It found the husband grossly negligent and allowed the wife alimony or separate maintenance. Of course, the courts have no authority to ignore such contracts when freely and fairly made, as held by many decisions, but when the parties are still husband and wife there is a duty on the part of the husband to care for the maintenance of the wife when they prefer to live apart by reason of his fault, as found by the trial court in this case.

In the case of *Cooper v. Cooper,* 100 Kan. 386, 164 Pac. 153, there was an antenuptial contract which contained, among other things, an express waiver by the proposed wife of all claim to any interest in his property except a half interest in two city lots, and there was also a provision "as to support and maintenance while she should live with him as his wife." The court held the parties to be "in equal wrong" and the contract was held to be valid. In the opinion it was said as to the duty of the husband to support and maintain the wife that—

"Ordinarily a wife is entitled to reasonable support so long as the marriage status continues. Under the marriage contract plaintiff is not entitled to support if she neglects to perform her wifely duties or refuses to live with the

defendant as his wife. Although she is not living with him, it must be assumed in this case as the record stands that the separation is due to the fault of the defendant. Of course he cannot escape responsibility for her support if her failure to live with him and perform the conditions of the contract was caused by his wrong. On the other hand, if the failure to live with him is the result of her wrong, she would not, under the terms of the contract, be entitled to support. In providing for support allowances should be made in the form of periodical payments so that they may be varied as conditions may change. . . . Periodical allowances for the future were made by the trial court; that is, that defendant should pay her fifteen dollars per month in addition to the home furnished, which must be deemed to be a reasonable provision." (p. 388.)

As the antenuptial contract in the case at bar did not contain any provision as to separate maintenance of the wife, it was not necessary for the court to take it into consideration in determining the right of the wife to separate maintenance even though the agreement may have been freely and intelligently made.

The last assignment of error concerns the excessiveness of the allowance made by the trial court. The appellant complains that the amount allowed exceeded the entire value of the property owned by the husband. The court allowed her $60 per month for the twenty years of her life expectancy, which amounted to $14,400, and found the value of his eighty-acre tract in McPherson county to be $6,400 and the value of his portion of the royalty therein to be about $12,000, and that he had received as his portion thereof for the first three months of the year 1938 the sum of $1,287, which would be about $429 per month. No finding is made by the court as to earnings of the husband at his usual vocation or occupation. Appellant cites the ruling in the Cooper case, *supra*, where $2,500 was allowed in addition to $15 per month. It was there held:

"An allowance of separate maintenance to a wife who is living apart from her husband is held to be excessive and unwarranted under an antenuptial agreement adjudged to be valid and binding upon the parties." (Syl.)

In the case of *Nixon v. Nixon*, 106 Kan. 510, 188 Pac. 227, it was held:

"Although the statute provides that the wife shall be allowed alimony 'out of the husband's real and personal property' where a divorce is granted by reason of his fault, his earning capacity is a matter to be taken into account, and he may, in a proper case, be required to pay permanent alimony beyond the value of his estate at the time the marriage is dissolved." (Syl.)

We do not find the separate maintenance allowed to be excessive. We find no error in the rulings and judgment of the trial court,

and we allow the attorney for the appellee for his services in preparing for the hearing in this court the sum of $100, to be taxed as costs in the case.

The judgment is affirmed.