No. 35,367

Delmas Littell, Jes Davison, C. F. O'Connor and Hardin Littell, *Appellants*, v. J. E. Millemon, B. B. Rickart and O. J. Weitzel, as The District Board of School District No. 18, Morton County, *Appellees*.

· (121 P. 2d 233)

Opinion filed January 24, 1942.

*G. L. Light* and *Auburn G. Light,* both of Liberal, for the appellants.
*Oscar F. Perkins,* of Elkhart, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This action was instituted by four residents of a school district against defendants, members of a district school board, for the purpose of contesting the declared result of a school election, which was held in school district No. 18, on the question of consolidating that district with Rolla consolidated grade school district No. 17, both school districts being located in Morton county.

The election resulted in a tie vote and the consolidation was declared defeated. It was, and now is, plaintiffs' contention the two challenged votes, cast against consolidation, should not have been counted for the reason they were not cast by qualified electors. Judgment was for defendants, and plaintiffs appeal.

The sole question is whether the residence of the two persons, a brother and sister, was of such character as entitled them to vote at the school election in district No. 18, in which they continued to own and operate a farm but on which they had not actually resided for thirty days next prior to the election. Most of the facts were covered by the following stipulation:

"It is stipulated and agreed that all of the parties to this action are residents

of school district No. 18, Morton county, Kansas; that all of the plaintiffs are duly qualified electors and/or voters of said school district No. 18, and that the defendants are the duly elected, qualified and acting district board of said school district, and that said district board acted as the election board at the school election hereinafter mentioned, as provided by law. That all parties to this action were at all times acting, and have acted in good faith.

"That on the 13th day of August, 1940, an election was held by said school district No. 18 to vote upon the proposition of consolidating said school district No. 18 with Rolla Consolidated Graded School District No. 17, Morton county, Kansas; that said election was duly, regularly, legally and properly called and held, and that the result of said election was declared by said election board to have been and to be as follows:

Number of votes 'For Consolidation,' 14,
Number of votes 'Against Consolidation,' 14,

there being a total of 28 votes cast and received at said election, and that said election and district board thereupon declared, and still declare, that said proposition for consolidation of said school districts was defeated and failed to carry.

"That two of the persons casting votes at said election upon said proposition were H. L. Greening and his sister, Clara Greening. That said persons are residents of Morton county, Kansas, and own and farm real property located and situated within said school district No. 18. That for many years prior to the month of October, 1939, said persons lived and resided upon said farm, but that during the latter part of October, 1939, a nephew of H. L. Greening and Clara Greening, who resided at Rolla, Kansas, and outside of school district No. 18, and owning a residence in the city of Rolla, temporarily moved outside of Morton county to continue his business, and that said nephew requested and prevailed on the said H. L. Greening and Clara Greening to occupy his home at Rolla, Kansas, until his return or until he could sell said residence, and that due to the wind erosion and dust conditions in the vicinity of the farm home of H. L. Greening and Clara Greening in said school district No. 18, and in order to accommodate their said nephew, the said H. L. Greening and Clara Greening went to said city of Rolla, Kansas, outside of school district No. 18, to temporarily occupy the home of their said nephew, taking such household furniture and utensils as necessary with them, but leaving a part of their furniture in the home located in said school district No. 18. That the said H. L. Greening has at all times continued to personally operate his farm in school district No. 18, and at the time said H. L. Greening and Clara Greening went to occupy the home of their nephew they intended to return to their farm in school district No. 18, and have never changed such intentions, and still intend to return to said farm, and consider it their home, and intend to return to said farm at any time their said nephew wishes possession of his house at Rolla, Kansas. That the said H. L. Greening and Clara Greening never disposed of their chickens at the time they went to occupy the house at Rolla, Kansas, but left said chickens with a neighbor with the intention to have the same when they returned to the farm; that said H. L Greening and Clara Greening had continuously occupied the house at Rolla, Kansas, from the month of October, 1939, to the 13th day of August, 1940, the date of said elec-

tion, but that they have never paid any rent for the use of said property other than care for the property; that H. L. Greening goes ·to and visits said farm almost daily and owns personal property kept and used thereon; that he personally performs the labor in operating said farm. That H. L. Greening is a member of the rural telephone line and keeps his dues paid and is in good standing.

"That at the time the said H. L. Greening and Clara Greening presented themselves to vote at said election their right to so vote was duly and properly challenged and protested by the plaintiff, Delmas Littell, and that thereupon the chairman of said election board orally tendered to said persons and each of them an oath substantially complying with that required by G. S. 1935, 72-405, and that upon orally taking such oath said persons and each of them were allowed by said election board to vote at said election, over the challenge and protest of the said Delmas Littell, one of the plaintiffs herein.

"That each of the plaintiffs in this action have children now attending school in said school district No. 18, and that said children and all of them would be eligible to attend the school maintained by said school districts Nos. 17 and 18 if consolidated.

"That the school district board of school district No. 18 provided and furnished transportation for all the children of school district No. 18 to school district No. 17 in a proper conveyance during the school year of 1940-1941, now ended, and paid their tuition in said school district No. 17."

The only oral testimony was that of the two challenged voters. Clara Greening testified:

"I recall the occasion of the election held in school district No. 18 on August 13th, 1940, to vote upon the question of consolidation with district No. 17; I was at that time indefinitely maintaining my home in Rolla, Kansas, having lived there perhaps six months. My right to vote at such election was challenged, but after taking an oath I was allowed to vote. I voted against ·consolidation. We left the farm in October, 1939. My home was not permanently in Rolla; it was down on the farm."

H. L. Greening testified:

"We moved from school district No. 18 to my nephew's house in Rolla in October, 1939. My right to vote at this election was challenged, but after taking an oath I was allowed to vote. I voted against consolidation."

As stipulated, both voters took an oath with respect to their residence, pursuant to the provisions of G. S. 1935, 72-405. The trial court made the following finding:

"The evidence in the case, including the agreed statement of facts, convinces me that said H. L. Greening and Clara Greening were, at the date of said election, and had been for more than thirty days prior thereto, bona fide residents of said school district No. 18, were qualified electors and legally entitled to vote on the proposition there and then submitted."

Appellants concede that, in view of the evidence, both persons

would have been qualified voters at a general election. Appellants, however, contend a person is required to actually reside in a school district for thirty days next prior to ·a school election in order to qualify as a voter at such election. They assert the question is controlled entirely by the provisions of G. S. 1935, 72-404, which reads:

"The following persons shall be entitled to vote at any district meeting: All persons possessing the qualifications of electors as defined by the constitution of the state, *and who shall have been in good faith residents of the district for thirty days next prior to the time of offering to vote at said election.*" (Emphasis supplied.)

Article 5, section 1, of our constitution, defines the qualifications of electors as follows:

"Every citizen of the United States of the age of twenty-one years and upwards, who shall have resided in Kansas six months next preceding any election, and in the *township* or *ward* in which he or she offers to vote, at least thirty days next preceding such election, shall be deemed a qualified elector." (Emphasis supplied.)

Appellants claim the italicized portion of G. S. 1935, 72-404, must have been intended to require voters to *actually reside* in the district for the designated time prior to the election or there could·have been no purpose for adding the italicized portion of the statute to the constitutional requirements. Clearly the statute requires compliance with constitutional provisions, insofar as applicable, and also requires compliance with the italicized portion of the statute. But does it follow appellants are correct in their conclusion that the only purpose of the italicized portion of the statute could have been to require a voter to *actually reside* in the election district thirty days next prior to the election? If appellants' contention be sound it inevitably follows that a person who owns a farm in a school district which he continues to operate, and upon which a residence building is located, and upon all of which property he pays taxes for school purposes, but who temporarily resides elsewhere for the period of thirty days next prior to the election, must be deprived of his right of franchise at a school election. That would be the result of. appellants' contention irrespective of the necessity for temporary absence and irrespective of a clear intention of the person to return to his place of former and permanent residence.

Was that the result the lawmakers intended? In order to warrant such a drastic conclusion, the deprivation of a right of franchise, the legislative purpose and intent to that effect should clearly ap-

pear. In the first place it will be observed the words "actually resided" were not employed by the lawmakers. The words they did employ were "and who have been in *good faith residents of the district.*" (Emphasis supplied.)

It must be, and it is assumed the constitution required residence in good faith, but in what voting district? Was the residence referred to in the constitution sufficient for the purpose of the instant legislation with respect to elections in school districts? These queries clearly bring us face to face with the real purpose of the statute. It must be remembered our constitution does not provide for school district elections. It provides for two, and only two, elections by the people, namely, general elections and township elections. (Const., art. 4, § 2; *Wheeler v. Brady,* 15 Kan. 26, 30; *State v. Monahan,* 72 Kan. 492, 494, 84 Pac. 130.) It will also be observed the constitutional provision, heretofore quoted (art. 5, § 1), defining the qualifications of electors, refers only to citizens who shall have resided in the *township* or *ward* in which he or she offers to vote. The lawmakers undertook to provide for other than general or township elections and for elections which were not to be held within districts necessarily limited by the territorial boundaries of a township or ward. When the lawmakers undertook to legislate with respect to those elections, it manifestly ,became necessary to first designate the newly created election district. Second, the lawmakers desired to limit the right to vote in that district to persons who were residents, not of a township or ward, but of the new election district which had been created specifically and solely for school purposes. In order to make clear the kind of residents who would be permitted to vote in an election held in that district, the lawmakers defined the character of their residence. The character of residence required was residence in good faith in the election district.

Good faith residence in the election district for thirty days next prior to the election is, however, not the only qualification exacted by the statute. It also requires compliance with the constitutional qualifications heretofore stated. (Art. 5, § 1.)

The reasons for requiring compliance with the constitutional provision in addition to the other requirements of the statute are therefore clear. Its purpose was not to require the voter to actually reside in the school district for the thirty days next prior to the, election, but its purpose and intent manifestly was that he should

not be permitted to vote at an election in a school district unless he had been in good faith a resident of the district for thirty days next preceding the election. If that was not the purpose and intent of the statute the consequences indeed would be startling. A member of the state legislature, for example, who owns and operates a farm on which his home is located in the school district, but who temporarily resides in the state capitol during the thirty-day period next prior to the election, would lose his right to vote at a school district election. Many public officials, similarly situated, would be deprived of their vote at such election. The same would be true of numerous traveling salesmen, business and professional men, who were required to be absent temporarily from their actual permanent residence. A multitude of other similar examples readily suggest themselves. Had the lawmakers intended the result advanced by appellants, they easily could have said so in plain terms. They did not do so. The words "actual resident," contained in the affidavit a person is required to sign when challenged to vote at a school district election (G. S. 1935, 72-405), does not differ from the oath or affirmation required at the general election (G. S. 1935, 25-408, *Third*), and manifestly was intended to mean his actual permanent residence.

Appellants concede the question they now raise relative to a school election has not been decided in this state. The case of *Gentry v. Hornung*, 136 Kan. 340, 15 P. 2d 445, involving a school election, is not out of harmony with the views herein expressed.

Residence under our statutes has been defined as the place adopted as one's habitation, and to which, when he is absent, he has the intention of returning. (G. S. 1935, 77-201; *Twenty-third;* 25-407.) A person is not considered to have lost his residence who leaves his home and goes into another state or territory, or county of this state, for temporary purposes merely, with an intention of returning. (G. S. 1935, 25-407, *Second*. See, also, *Keith v. Stetter*, 25 Kan. 100; *Pendleton v. Pendleton*, 109 Kan. 600, 602, 201 Pac. 62; *Strackeljohn v. Campbell*, 136 Kan. 145, 12 P. 2d 829; *Blair v. Blair*, 149 Kan. 3, 5, 6, 85 P. 2d 1004; 20 C. J., Elections, § 26; 29 C. J. S., Elections, § 19; 9 R. C. L., Elections, § 46; 18 Am. Jur., Elections, §§ 56, 59. It is elementary that residence is a combination of acts and intention. Both must concur. The evidence in the instant case was sufficient to support the finding of the trial court, and the judgment is affirmed.