No. 36,718

MABEL ARNETTE, *Appellant* v. CHARLES BYRON ARNETTE, JR., *Appellee.*

(178 P. 2d 1019)

Opinion filed April 5, 1947.

*Vincent F. Hiebsch,* of Wichita, argued the cause, and *William J. Wertz, Milton Zacharias, Eugene L. Pirtle,* all of Wichita, *George Templar* and *Earle N. Wright,* both of Arkansas City, were with him on the briefs for the appellant.

*Lawrence E. Christenson,* of Winfield, argued the cause, and *Tyree B. Harris, III,* of Nashville, Tenn., and *R. Winston Price,* of Murfreesboro, Tenn., were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for divorce, custody, control and support of two minor children, temporary and permanent alimony and for a restraining order. The plaintiff appeals from an order setting aside the service of summons and certain temporary orders.

The petition alleged the necessary residence of appellant in Cowley county, Kansas, and further, insofar as here material, in substance, alleged:

Defendant was residing at the Lagonda Hotel, Winfield, Kan. The parties were married in 1938; by their joint efforts they had accumulated real estate at 1507 Maxey Lane in Nashville, Tenn., of the value of $12,000 and personal property consisting of household goods and furnishings of the value of $1,500; defendant was interfering with plaintiff's custody of the children and should be restrained from visiting them except at reasonable hours; defendant should be restrained from disposing of any of the real and personal property until further order of the court; temporary orders should be made for the custody of the children and for the support of them and the plaintiff.

At an *ex parte* hearing the requested temporary orders were made.

The sheriff had not served appellee personally. His return showed he served the summons by leaving a certified copy thereof at appellee's usual place of residence on the 15th day of May, 1946.

The trial court, on a special motion of appellee to quash the service of summons, set aside the service and the temporary orders after hearing the evidence of the parties on the motion. The motion to quash challenged the jurisdiction of the court on the grounds appellee was not served personally within Cowley county and was not served with summons by leaving a copy thereof at his *usual place of residence.*

The first question presented is whether the summons was left at appellee's "usual place of residence." We do not deem it necessary to narrate all the testimony. The pertinent parts thereof, in substance, were:

Appellee had been in the service since 1943; the parties owned their home and household furniture and furnishings at Nashville, Tenn.; that is where the family resided when appellee entered the service; as in many similar cases during the war, appellant accom-

panied appellee from place to place when it was possible to do so; during his absence appellant spent substantial periods of time in Winfield, Kan., the home of her parents; appellant left Winfield and returned to her own residence in Nashville, Tenn., on April 26, 1946; she had been notified by appellee he would be released from the service on May 2, following, and would be coming home; on May 3 appellant left Nashville with the children and returned to Winfield; appellee arrived in Nashville on May 4 and found appellant and the children had left the state; appellee learned from a Nashville attorney that his wife had engaged him to file a divorce action; appellee spoke to appellant by telephone, attempted to learn her intentions and endeavored to ascertain when service would be obtained on him in Tennessee; he desired to leave in two or three days to visit his wife and the children in Winfield; on May 9 he arrived in Winfield and registered at the Lagonda Hotel; on May 14, in order to reduce expenses, he moved to 509 East 13th street, where the summons was left on May 15; he left Winfield on May 17 to return to his residence in Tennessee; he obtained some temporary employment with the Cities Service Oil Company at Winfield to help defray expenses while visiting there; he at all times intended to return to his home in Nashville after he visited his wife and children.

There was other evidence of plans plaintiff and defendant had made between December, 1945, and February, 1946, to continue their residence in their home at Nashville upon defendant's return from the service.

There was evidence of their plans that appellee would establish a packing house business in the neighboring town of Murfreesboro with the understanding, however, they would continue to reside in Nashville where appellant desired to live. There was evidence of appellee's intention to complete the contemplated business transaction at Murfreesboro and to obtain possession of their home in Nashville from the tenant.

G. S. 1935, 60-2507 reads:

"The service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence, at any time before the return day."

G. S. 1935, 77-201 (24) provides:

"The terms 'usual place of residence' and 'usual place of abode,' when applied to the service of any process or notice, shall be construed to mean the

place usually occupied by a person. If such person have no family, or do not have his family with him, his office or place of business, or if he have no place of business, the room or place where he usually sleeps shall be construed to be such place of residence or abode."

In commenting on the evidence the trial court said:

"It seems to me from the conduct of the parties as shown by all of the testimony and by the plaintiff herself, and their conduct, it is all consistent with the idea of maintaining a home in Nashville, Tennessee. I am inclined to think that they didn't acquire residence here, because of the expressed intention and conduct of the parties. The motion to quash is sustained."

The trial court incorporated a formal finding in the journal entry of judgment as follows:

"Thereupon, both parties having completed argument of their cause and the Court being duly advised in the premises finds that the defendant, Charles Byron Arnette, Jr., did not, and does not have a residence in the State of Kansas, that said defendant did not have such a place of residence, abode or business in the State of Kansas that he could be personally served with Summons by leaving a copy of same thereat, that the address of the place at which said copy was left was not his 'usual place of residence, abode or business,' that the pretended service of summons and restraining order entered herein should be quashed, set aside and held for naught."

It is conceded the residence of appellee and his family was Nashville, Tenn., prior to appellee's entrance into the service of his country. A citizen, as we have said, may change his residence either temporarily or permanently. And whether he does so, or which he does, is determined by his acts and his intentions. (*State, ex rel., v. Corcoran,* 155 Kan. 714, 719, 128 P. 2d 999, and cases therein cited.) When, if ever, did appellee's residence change? The general rule is that when a residence is once shown to have been established it is presumed to continue until it is clearly shown to have been abandoned. (*Keith v. Stetter,* 25 Kan. 100.) The trial court did not believe their residence in Tennessee was ever abandoned. It was convinced the evidence disclosed it was the intention of both parties to continue the established residence.

Counsel for appellant contend no rule requires any stated time one must abide at a place in order to establish his residence; that a new place might become one's residence the first day he arrives there, and they cite *Ford, Adm'x, v. Peck,* 116 Kan. 74, 225 Pac. 1054; *Blair v. Blair,* 149 Kan. 3, 85 P. 2d 1004. The contention is sound and the cited decisions support it. On the other hand, the cases are not authority for the proposition that mere abiding at a place for an even longer period necessarily establishes such place

as one's "usual place of residence." The fundamental principle enunciated in both of the cases relied upon by appellant is that a change of residence to be effectual really involves two separate intentions, ". . . one to abandon the old location, and one to abide in the new. If the last intention be formed, it necessarily includes the other." (*Ford, Adm'x, v. Peck,* supra, p. 76.)

In the early case of *Hart v. Horn,* 4 Kan. 232, the true doctrine was aptly declared to be:

"But we find it laid down in all the authorities that an original domicile, whether of birth or otherwise, if once fixed, 'clings closely,' and we conceive that it can never be changed by the mere intent of the party. The act must accompany and verify the intent. As the homely proverb asserts that 'actions speak louder than words,' actions must corroborate, and confirm the words. 'The fact and the intent must concur.'" (p. 239.)

Counsel for appellant recognize these established principles but contend the fact appellee had obtained a room in Winfield, less than two blocks from where appellant lived, and had secured employment in Winfield is evidence he had established his "usual place of abode" in Kansas, and that the service of summons was valid.

We agree that evidence could not be ignored as bearing on the subject of intent. But we have no doubt the trial court carefully considered it and weighed it together with all other testimony indicating, or tending to indicate, appellee's intent. Where a trial court makes a specific finding of fact on apparently conflicting, or actually conflicting, evidence, our only function on appeal is to ascertain whether there is substantial competent evidence which supports, or tends to support, the finding made and not whether there is some evidence to support a contrary finding had one been made. (*State v. Garlinghouse,* 157 Kan. 91, 138 P. 2d 421; *Irwin v. Irwin,* 162 Kan. 185, 188, 174 P. 2d 1021.)

Appellant next urges appellee accepted service of summons by acknowledgment thereof. G. S. 1935, 60-2515, provides:

"An acknowledgment on the back of the summons, or the voluntary general appearance of a defendant, is equivalent to service."

In the argument on this particular point appellant does not contend appellee acknowledged service on the back of the summons or that he *voluntarily* entered his general appearance in the action. The factual point emphasized and relied upon by appellant is that appellee admitted to his friends and in open court he had received the summons and had notice of the action. He did admit he re-

ceived the summons which was left at the residence room in which he slept the preceding night. He had discussed the action with others. Whatever the rule may be in some jurisdictions the facts appellee admitted do not constitute a legal acknowlegment of service under our statute. No decision of this court holding the admitted facts constitute a valid acknowledgment of service is cited and we are aware of none.

It is finally contended the evidence introduced by appellee in support of his motion to quash went to the merits of his cause of action and converted his special appearance into a general appearance for all purposes, citing *King v. Ingels,* 121 Kan. 790, 250 Pac. 306. The general rule governing such conduct is well established and plainly stated in the King case. The question here is did appellee, by the evidence he introduced, raise an issue of law or fact which constituted a general appearance. A careful examination of the evidence introduced fails to disclose it raised any issue of law or fact involving the merits of the action. The testimony introduced disclosed appellee's conduct in attempting to acquire an interest in a packing business in the neighboring town of Murfreesboro, Tenn., which transaction he and his wife had discussed in December, 1945, and February, 1946, prior to the filing of the instant action in May, 1946. The testimony also disclosed appellee and a brother-in-law had contemplated engaging in the packing business together and that appellant did not object, but made it very clear to the brother-in-law she wanted to continue to live in Nashville. The testimony of a real-estate agent disclosed he had handled the renting of the home of the parties in Nashville during the years appellee was in the service and that, pursuant to instructions from appellee, he had communicated with the tenant on April 4, 1946, relative to surrendering possession thereof. The testimony also showed that thereafter appellee had made a new agreement with the tenant to remain in the home for a short, indefinite period until some personal matters were cleared up. The testimony of appellee's father disclosed that since appellee had not yet taken any action on the Murfreesboro deal he, the father, had contracted for the purchase of the property, had paid $8,000 therefor and had put a packing house on it.

The foregoing evidence was not directed to, and did not involve, the merits of any issue in the divorce action. It was intended to, and did, show conduct in harmony with appellee's expressed inten-

tention to continue his residence in Nashville, Tenn. Some of it tended to show a similar intention of appellant. The testimony went to the question of residence, a jurisdictional issue, raised by appellee's special appearance and did not constitute a general appearance for all purposes. (*Shearer v. Insurance Co.*, 106 Kan. 574, 189 Pac. 648; *Sooy v. Brinkman*, 129 Kan. 723, 726, 727, 284 Pac. 375; *Cox v. Pabst Brewing Co.*, 152 Kan. 375, 378, 103 P. 2d 871; *Garvey v. Long*, 154 Kan. 85, 114 P. 2d 821.)

The testimony mentioned in connection with appellant's last contention was taken by deposition. Some of it was objected to at the time the depositions were taken. Appellant does not now complain concerning the admissibility of such evidence. We assume the point has been abandoned and shall, therefore, not treat it. In any event we think there was substantial competent testimony to support the finding of the trial court.

The judgment is affirmed.