No. 49,222

DAVID LINES, *Appellee and Cross-Appellant,* v. CITY OF TOPEKA, *et al., Appellants and Cross-Appellees.*

(577 P.2d 42)

773

Opinion filed April 1, 1978.

*Richard E. Jones,* assistant city attorney, argued the cause, and *Dan E. Turner,* city attorney, was with him on the brief for the appellants and cross-appellees.

*Kenneth F. Crockett,* of Hiatt, Crockett, Hiatt & Carpenter, Chartered, of Topeka, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from an order granting summary judgment in favor of plaintiff, David Lines, requiring the City of Topeka to reinstate him in the position of city building inspector with back pay.

Plaintiff was appointed building inspector for the city in November, 1968. Prior to the time of his appointment the city enacted Topeka City Ordinance 8-101, *et seq.,* relating to the creation of a building department and chief building inspector. Section 8-102 provides the chief building inspector shall be appointed by the mayor, with the consent of the other commissioners, to serve for an indefinite term. It refers to Charter Ordinance No. 14 for its removal provisions. Ordinance No. 14 required a vote of four commissioners for removal without cause. The other terms of that ordinance are irrelevant because Charter Ordinance No. 14 was repealed in 1973 and replaced by Charter Ordinance No. 22. The new ordinance required the city attorney, city clerk, city treasurer, city auditor, city engineer, superintendent of streets, superintendent of water works, fire chief, police chief, city forester, superintendent of public parks, airport manager, traffic engineer, building inspector, director of water pollution control, and the refuse director to be residents of the city in order to qualify and remain in their respective offices. Any of said officers could be removed from his respective office by a three-fifths vote of the commissioners, with or without cause. Neither the charter ordinance nor any other city ordinance defined the term "residence." Ordinance 8-101, *et seq.,* was never amended or repealed.

In June, 1974, plaintiff moved from a private home to an apartment located within the city limits of Topeka. On February

14, 1975, plaintiff married his present wife. At the time of their marriage she owned a home in rural Perry, Kansas. For reasons unnecessary to discuss in order to resolve this appeal, plaintiff began staying at the Perry home on occasion but continued to maintain his Topeka apartment. Whether the Perry home became his "residence" is disputed and was never resolved by the trial court.

On March 24, 1976, Commissioner Kenneth Elder questioned whether plaintiff was any longer a resident of the City of Topeka. Two responses by the city attorney's office did not clear up the matter and on April 6, 1976, Mayor Bill McCormick proposed the city commission direct the city attorney's office to draft an ordinance defining "residence" so that it might be enacted into law. More importantly, he recommended plaintiff "be continued in employment temporarily until the ordinance amendment becomes law, and, at that time he be notified to comply with the defined residence requirements or be terminated from his employment." The proposal was passed and approved by a unanimous vote of the commissioners. The commission also granted plaintiff a reasonable time to comply with the ordinance following its enactment. For some unknown reason the proposed ordinance was prepared but was never enacted.

In a surprise move on April 29, 1976, Mayor McCormick recommended plaintiff be terminated for poor job performance. At the regular commission meeting on May 4, 1976, the commission refused to terminate plaintiff for the reason stated by the mayor. McCormick then proposed he be terminated because he was not a Topeka resident as required by Charter Ordinance No. 22. Three commissioners voted in favor of the proposal and plaintiff was terminated.

Plaintiff filed suit in district court challenging the constitutionality of Charter Ordinance No. 22, contesting the legality of the termination proceedings, and seeking reinstatement to the position of chief building inspector with payment of back wages. After completing discovery both parties moved the trial court to grant summary judgment in their favor. On May 19, 1977, the trial court declared that Charter Ordinance No. 22 was unconstitutional for vagueness and uncertainty, and ordered that plaintiff be reinstated as chief building inspector with payment of back wages.

The city appeals, arguing the trial court erred in (1) declaring Charter Ordinance No. 22 unconstitutional, (2) granting plaintiff's motion for summary judgment, (3) failing to grant its motion for summary judgment, and (4) failing to consider whether defendant is entitled to a set-off on damages for other income earned by plaintiff. Plaintiff cross-appeals, arguing the trial court erred in (1) failing to declare Charter Ordinance No. 22 unconstitutional because it places an unreasonable restriction on travel and violates the equal protection clause, and (2) failing to award plaintiff attorney's fees.

Before considering the issues raised by the parties it is necessary to determine which ordinance governs the removal of the chief building inspector. Plaintiff contends 8-102 controls; the city contends Charter Ordinance No. 22 controls. We agree with the city's position.

Although Charter Ordinance No. 14 and 8-102 governed the removal of the building inspector when plaintiff was appointed to that position in November, 1968, there is no rule of law which prohibits the city from changing the method by which it removes its department heads. No person has a vested right in any rule of law entitling him to insist it shall remain unchanged for his benefit. (*State ex rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 [1978].)

Because Charter Ordinance No. 22 was enacted after 8-102, its removal provisions apply. It is well established that the latest expression of the governing body upon a subject applies, and it operates to repeal the earlier inconsistent provisions even though both may remain on the book. (*Mannel v. Mannel,* 186 Kan. 150, 348 P.2d 626 [1960]; *Lawton v. Hand,* 183 Kan. 694, 331 P.2d 886 [1958].)

The first issue on appeal concerns the constitutionality of Charter Ordinance No. 22. The answers to the following questions determine this issue: Is the ordinance impermissibly vague? Does the ordinance impermissibly restrict the right of travel protected under the constitution? Does the ordinance violate equal protection because it applies to some city employees but not others?

It must be remembered that it is the duty of this court to uphold legislation rather than defeat it. If there is any reasonable way to construe the law as constitutionally valid, or if any set of facts can

justify the legislation, that should be done. (*State v. Kirby,* 222 Kan. 1, 563 P.2d 408 [1977]; *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015 [1976]; *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 [1974]; *Dandridge v. Williams,* 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153, reh. denied 398 U.S. 914, 26 L.Ed.2d 80, 90 S.Ct. 1684 [1970].)

The basic test as to what constitutes a vague and indefinite statute was stated in *Connally v. General Const. Co.,* 269 U.S. 385, 70 L.Ed. 322, 46 S.Ct. 126 (1926). There the Court held that the terms of a penal statute must sufficiently inform those who are subject to it what conduct will subject them to its penalties, and an act which forbids or requires the doing of the act in terms so vague that persons of common intelligence must necessarily guess at its meaning and application violates due process. (See, *Kansas City Millwright Co., Inc. v. Kalb,* 221 Kan. 658, 562 P.2d 65 [1977].) A statute will not be considered vague, however, if it employs words commonly used, previously judicially defined, or having a settled meaning in the law. (*Unified School District No. 255 v. Unified School District No. 254,* 204 Kan. 282, 463 P.2d 499 [1969].)

Here the issue is whether the term "residence" is so vague as to require persons to guess at its meaning and application. We think not.

Although the terms "domicile" and "residence" may have different legal meanings, "residence" as defined in the statute is substantially the equivalent of "domicile"—the adoption of a place of habitation with the intent to return thereto. (*Stumfoll v. Inman,* 188 Kan. 553, 363 P.2d 443 [1961]; *Irvin v. Irvin,* 182 Kan. 563, 322 P.2d 794 [1958]; *Arnette v. Arnette,* 162 Kan. 677, 178 P.2d 1019 [1947]; *Gleason v. Gleason,* 159 Kan. 448, 155 P.2d 465 [1945]; *Littell v. Millemon,* 154 Kan. 670, 121 P.2d 233 [1942]; *Blair v. Blair,* 149 Kan. 3, 85 P.2d 1004 [1939].) While in a technical sense a person may have more than one residence, he has only one domicile. (*McCarthy, Aplnt. v. Phila. Civ. Svc. Com.,* 19 Pa. Commw. Ct. 383, 339 A.2d 634 [1975], aff'd 424 U.S. 645, 47 L.Ed.2d 366, 96 S.Ct. 1154 [1976].) Much of the confusion in terms was eliminated by the passage of K.S.A. 77-201 *Twenty-third,* which states:

"The term 'residence' shall be construed to mean the place adopted by a person as such person's place of habitation, and to which, whenever such person is

absent, such person has the intention of returning. When a person eats at one place and sleeps at another, the place where such person sleeps shall be deemed such person's residence."

Although 77-201 was designed by the legislature to apply to construction of statutes, the rules contained therein apply to ordinances when those ordinances do not contain their own definitions or rules of construction. (See, *Phillips v. Vieux,* 210 Kan. 612, 504 P.2d 196 [1972]; *Desser v. City of Wichita,* 96 Kan. 820, 153 Pac. 1194 [1915]; *Denning v. Yount,* 9 Kan. App. 708, 59 Pac. 1092, aff'd 62 Kan. 217, 61 Pac. 803 [1900].) Taking into consideration prior judicial constructions and 77-201 *Twenty-third,* we have no hesitancy in holding that the term "residence" has a common understanding and the term is not so vague as to render Charter Ordinance No. 22 unconstitutional.

Plaintiff presents two constitutional challenges on the residency requirement. First, he argues it infringes upon his "right to travel." Second, he argues it violates the equal protection clause.

Plaintiff argues the "compelling state interest" test should apply because the right to travel is a fundamental interest, citing *Shapiro v. Thompson,* 394 U.S. 618, 22 L.Ed.2d 600, 89 S.Ct. 1322 (1969); and *Donnelly v. Manchester,* 111 N.H. 50, 274 A.2d 789 (1971). We do not find those cases persuasive. An examination of *Shapiro* and its progeny, *Dunn v. Blumstein,* 405 U.S. 330, 31 L.Ed.2d 274, 92 S.Ct. 995 (1972), and of *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 39 L.Ed.2d 306, 94 S.Ct. 1076 (1974), convinces us that the aspect of the right to travel with which these cases were involved is not present here. They were involved with the validity of durational residency requirements and the effect of those requirements on interstate travel.

Our conclusion that the *Shapiro* line of cases and *Donnelly v. Manchester,* supra, do not apply is bolstered by two recent United States Supreme Court decisions. In *D.P.O.A. v. City of Detroit,* 385 Mich. 519, 190 N.W.2d 97 (1971), dismissed for want of substantial federal question in 405 U.S. 950, 31 L.Ed.2d 227, 92 S.Ct. 1173 (1972), the Michigan Court applied the "rational basis" test in a case requiring Detroit police officers to be residents of that city. The fact the United States Supreme Court dismissed the case for want of a substantial federal question is a decision on the merits affirming the appealed case. (*Hicks v. Miranda,* 422 U.S. 332, 344, 45 L.Ed.2d 223, 95 S.Ct. 2281

[1975]; *Ahern v. Murphy,* 457 F.2d 363 [7th Cir. 1972].) Later, in *McCarthy v. Philadelphia Civil Serv. Comm'n,* 424 U.S. 645, 47 L.Ed.2d 366, 96 S.Ct. 1154 (1976) (*Per Curiam*), the United States Supreme Court affirmed the decision of the Pennsylvania Commonwealth Court (*McCarthy, Aplnt. v. Phila. Civ. Svc. Com.,* supra) in a residency requirement case, stating:

"We have not, however, specifically addressed the contention made by appellant in this case that his constitutionally recognized right to travel interstate as defined in *Shapiro v. Thompson,* 394 U.S. 618 (1969); *Dunn v. Blumstein,* 405 U.S. 330 (1972); and *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974), is impaired. Each of those cases involved a statutory requirement of residence in the State for at least one year before becoming eligible either to vote, as in *Dunn,* or to receive welfare benefits, as in *Shapiro* and *Memorial Hospital.* Neither in those cases, nor in any others, have we questioned the validity of a condition placed upon municipal employment that a person be a resident *at the time* of his application. In this case appellant claims a constitutional right to be employed by the city of Philadelphia *while* he is living elsewhere. There is no support in our cases for such a claim." (pp. 646-47.)

Applying the "rational basis" test which has been customarily applied in cases of this nature (see, *Wardwell v. Bd. of Ed. of City School Dist., Etc.,* 529 F.2d 625, 628 [6th Cir. 1976]; *Wright v. City of Jackson, Mississippi,* 506 F.2d 900, 903 [5th Cir. 1975]; *Miller v. Krawczyk,* 414 F. Supp. 998, 1001 [E.D. Wis. 1976]; *Ector v. City of Torrance,* 10 Cal. 3d 129, 135, 109 Cal. Rptr. 849, 514 P.2d 433 [1973], cert. denied 415 U.S. 935, 39 L.Ed.2d 493, 94 S.Ct. 1451 [1974]; *City of Memphis v. Intern. Broth. of Elec. Wkrs. U.,* 545 S.W.2d 98, 102 [Tenn. 1976]), we are only required to find that the legislation bears a reasonable relationship to the attainment of some legitimate state goal.

Various reasons have been given for enacting residency requirements. In *Ector v. City of Torrance,* supra at 135, the court provided several purposes:

". . . [T]he promotion of ethnic balance in the community; reduction in high unemployment rates of inner-city minority groups; improvement of relations between such groups and city employees; enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries. . . ."

The city justifies its residency requirement on the "emergency availability" and "salary expenditure" criteria; however, we are

not limited to those choices. Were that the case the city's classification might be endangered on equal protection grounds because it does not require all employees of the city to reside therein. We feel the proper justification for the city's residency requirement lies in an examination of the class of employees required to live in the city under Charter Ordinance No. 22. The group involved is narrowly drawn to include only department heads and major officers. All other employees are excluded. We feel the city is justified in requiring major officeholders to have a commitment and involvement with the city, its taxpayers and its activities in order to hold such an office. Thus, we see many criteria set forth in *Ector* applicable to the residency requirement.

There is no impermissible restriction on the right to travel in requiring city employees to live within the city limits. (*Wardwell v. Bd. of Ed. of City School Dist., Etc.,* supra; *Wright v. City of Jackson, Mississippi,* supra; *Miller v. Krawczyk,* supra; *Ector v. City of Torrance,* supra; *D.P.O.A. v. City of Detroit,* supra; *Hattiesburg Firef't'rs Local 184 v. City of Hattiesburg,* 263 So. 2d 767 [Miss. 1972]; *Abrahams v. Civ. Serv. Comm.,* 65 N.J. 61, 319 A.2d 483 [1974]; *Trainor v. City of Newark,* 145 N.J. Super. 466, 368 A.2d 381 [1976]; *Mandelbaum v. State Dept. of Civil Service,* 142 N.J. Super. 323, 361 A.2d 560 [1976].)

The equal protection clause does not prohibit differentiation between two classes of persons if there is a rational difference for the distinction in treatment accorded them. (*State ex rel. Schneider v. Liggett,* supra.) In *Rinaldi v. Yeager,* 384 U.S. 305, 16 L.Ed.2d 577, 86 S.Ct. 1497 (1966), the Court stated:

". . . Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' [Citations omitted.]" (p. 309.)

The question raised by plaintiff is whether the equal protection clause is violated because Charter Ordinance No. 22 applies to him, but not to firemen and policemen. If the "emergency availability" rationale were the only justification for requiring residency, plaintiff might prevail; but, as we stated earlier, we are allowed to consider any valid reason for the residency requirement applying to the class of persons of which plaintiff is a member. We feel it is a legislatively permissible goal to require

high level city officials, such as those enumerated in Charter Ordinance No. 22, to reside in the city, without making the same requirement of all other employees. We perceive a difference between management employees and other employees.

Although we disagree with the trial court on the constitutional issue, we are not reversing. We hold that as a matter of law the city was estopped from dismissing plaintiff at the time he was terminated. In *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.,* 221 Kan. 523, 527, 561 P.2d 792 (1977), we stated:

". . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. (*Wichita Federal Savings & Loan Ass'n v. Jones,* 155 Kan. 821, 130 P.2d 556; 31 C.J.S., Estoppel, § 59, p. 367.)"

On several occasions this court has applied the doctrine of equitable estoppel against cities where the facts of the case so required. (See, *Skaggs v. City of Pratt,* 183 Kan. 424, 327 P.2d 1083 [1958]; *Derby Oil Co. v. City of Oxford,* 134 Kan. 59, 4 P.2d 435 [1931]; *State, ex rel., v. City of Hutchinson,* 103 Kan. 370, 175 Pac. 147 [1918]; *City of Belleville v. Hallowell,* 41 Kan. 192, 21 Pac. 105 [1887]; *City of Leavenworth v. Laing,* 6 Kan. 274 [1870].)

In *Benson v. City of DeSoto,* 212 Kan. 415, 422, 510 P.2d 1281 (1973), it was said:

". . . It is generally recognized that with respect to matters within the scope of its power and authority to act, a municipal corporation is subject to the rules of estoppel in those cases wherein equity and justice require their application and where such application will not interfere with the proper exercise of governmental functions; but where there is an entire absence of such power on its part, there can be no estoppel as against the municipality or its inhabitants. (28 Am. Jur. 2d, Estoppel and Waiver, § 128.) . . ."

The facts in this case require the application of the doctrine of equitable estoppel against the city. The record clearly and unequivocally shows that the commissioners told plaintiff his job would not be in jeopardy until the city passed an ordinance defining "residence" and until he had been given a reasonable

time thereafter to comply with the newly enacted ordinance. Later, without advance notice or warning, the city terminated plaintiff for failure to maintain a Topeka residence and the proposed ordinance had never been passed. The minutes of the commission meeting of May 4, 1976, indicate plaintiff relied on the prior assurances by the city and therefore had not moved into the city, and was surprised by the change in the city's position. While it may not have been necessary for the city to enact the ordinance defining "residence," once it told plaintiff it was going to do so and he would have a reasonable time to comply with it after enactment, the city was bound by those statements when plaintiff relied upon them.

The decision of the trial court, although based upon the wrong reason, was correct in ruling plaintiff's dismissal to be improper. The judgment on the liability of the city will not be disturbed. (*Boldridge v. Estate of Keimig,* 222 Kan. 280, 288, 564 P.2d 497 [1977].)

Because of what we have heretofore held, it is unnecessary to consider the city's contention that it should have been granted summary judgment.

The city argues there should have been a hearing on the issue of damages because the issue was not reached by the motion for summary judgment. It is a general rule that a party is entitled to recover only his actual damages less those he might have reasonably prevented. (See, *Iseman v. Kansas Gas & Electric Co.,* 222 Kan. 644, 647, 567 P.2d 856 [1977]; *Theis v. duPont, Glore Forgan Inc.,* 212 Kan. 301, 510 P.2d 1212 [1973]; *In re Estate of Stannard,* 179 Kan. 394, 295 P.2d 610 [1956].) In a case involving wrongful discharge from employment the proper measure of damages is the amount the salary for the period would have been less the amount plaintiff earned, or which with reasonable diligence he could have earned, had he applied the same ability and devotion in a comparable job. (*Haskell v. Stryker,* 135 Kan. 611, 614, 11 P.2d 700 [1932]; *Rench v. Hayes Equipment Mfg. Co.,* 134 Kan. 865, 8 P.2d 346 [1932]; *Griffin v. Oklahoma Natural Gas Corp.,* 132 Kan. 843, 297 Pac. 662 [1931].) For cases applying the rule to public officials, see, *McReynolds v. Civil Service Com.,* 18 Ill. App. 3d 1062, 311 N.E.2d 308 (1974); *Matter of Brayer v. Lapple,* 52 A.D.2d 1034, 384 N.Y.S.2d 584 (1976); *Smith v. Helbraun,* 24 A.D.2d 518, 261 N.Y.S.2d 829 (1965); *Sutliffe v.*

*City of New York,* 132 App. Div. 831, 117 N.Y.S. 813 (1909).

Because the issue of damages was not reached by the motion for summary judgment the case should be remanded to the trial court with directions to hold a hearing on this issue.

Finally, plaintiff argues he should have been granted attorney's fees as costs in the action. Generally, attorney's fees are not allowable as damages in the absence of a statute. (*Will v. City of Herington,* 205 Kan. 422, 424, 469 P.2d 256 [1970]; *Barten v. Turkey Creek Watershed Joint District No. 32,* 200 Kan. 489, 510, 438 P.2d 732 [1968]; *Ablah v. Eyman,* 188 Kan. 665, 682, 365 P.2d 181 [1961].) Exercising its equity jurisdiction this court has on occasion taken exception to this rule. In *Barten,* this court approved an allowance of attorney's fees on the theory the District had acted in "bad faith." Plaintiff urges us to award fees here on the same theory. We have examined the record and conclude the case before us does not compare with *Barten.* The mere fact a party loses a lawsuit does not justify imposing attorney's fees upon him as costs. Likewise, there is no showing the city was totally unreasonable in its acts under all the circumstances. The district court was correct in denying attorney's fees.

In conclusion, we hold Charter Ordinance No. 22 is not unconstitutional but the city was estopped from dismissing plaintiff from his position as chief building inspector because of the acts of the commissioners. The decision of the trial court ordering plaintiff's reinstatement is affirmed and the case is remanded to the trial court for a hearing on the issue of plaintiff's damages.

The judgment is affirmed in part and reversed in part and remanded with directions.

McFARLAND, J., not participating.